UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANNA MARIE FRANCO,

              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No.  1:25-cv-00715-KES-HBK

FINDINGS AND RECOMMENDATIONS TO REMAND TO THE COMMISSIONER OF SOCIAL SECURITY [1]

FOURTEEN-DAY OBJECTION PERIOD

(Docs. 18, 20)

Anna Marie Franco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Docs. 18, 20-21).  For the reasons below, the undersigned recommends granting Plaintiff's motion for summary judgment, denying Defendant's cross-motion for summary judgment, and remanding for further administrative proceedings.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

## I.   JURISDICTION

Plaintiff protectively filed for disability insurance benefits on May 19, 2022, alleging an onset date of February 19, 2019.  (AR 178-84).  Benefits were denied initially and upon reconsideration (AR 59-80, 109-12; 81-108, 121-26).  Plaintiff appeared before an Administrative Law Judge ("ALJ") on March 26, 2024, with counsel and testified at the hearing.  (AR 36-58).  On June 14, 2024, the ALJ issued an unfavorable decision (AR 14-35), and on May 2, 2025, the Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## II.   BACKGROUND

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the parties' briefs.  Only the most pertinent facts are summarized here.

Plaintiff was 51 years old at the time of the hearing.  (*See* AR 243).  She graduated from high school.  (AR 39-40).  She lives with her daughter and grandchildren in an apartment.  (AR 40-41).  Plaintiff has past work as patient registration clerk, cashier, administrative assistant, and human resources assistant.  (AR 41-43, 52).  Plaintiff testified she is unable to work because of her back injury, total replacement of her left knee, right knee injury, high blood pressure, diabetes, shortness of breath, and sleep disturbances.  (AR 43-44).  She reported left knee pain that "locks up," and difficulty standing correctly, pain, swelling, and numbness in her right knee, headaches, high blood pressure, and shortness of breath due to cardiac blockage.  (AR 44-45).  She uses a cane provided after a work accident.  (AR 46).  Plaintiff experiences fatigue about half of the time, has lower back swelling, and uses a CPAP machine to sleep.  (AR 48-50).  She reported she can sit 15-20 minutes before needing to move around, can stand or walk for 10-15 minutes, and cannot lift more than five pounds.  (AR 51).

## III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

evidence" is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence is "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

A court may not substitute its judgment for the Commissioner's and must "uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Harmless error does not warrant reversal.  *Id*.  An error is harmless if it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision bears the burden of establishing harmful error.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To be considered disabled, a claimant must satisfy two conditions.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential evaluation to determine a claimant's disability.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

3

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

4

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from her alleged onset date of February 18, 2019, through March 31, 2024 (date last insured).  (AR 19).  At step two, the ALJ found the following severe impairments: lumbar degenerative disc disease, status post left knee arthroplasty, partial left Achilles tendon tear, right knee degenerative joint disease, fibromyalgia, and peripheral neuropathy.  (AR 19-20).  At step three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (AR 21).

The ALJ found Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b), except she could stand/walk four hours in an eight-hour workday; could occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolds; could occasionally stoop, kneel, crouch, crawl; and had to avoid unprotected heights. (AR 21).

At step four, the ALJ found Plaintiff could perform past relevant work as an administrative assistant, cashier, human resources assistant, and patient registration clerk.  (AR 26).  Accordingly, the ALJ concluded Plaintiff was not under a disability from February 18, 2019, through March 31, 2024.  (AR 27).

## VI.     ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  (Doc. 1).  Plaintiff raises two issues:

1. Whether the ALJ properly considered Plaintiff's symptom claims regarding her back and knee injuries, degenerative disc and joint disease, fibromyalgia, and peripheral neuropathy; and

2. Whether the ALJ properly assessed the RFC in light of the lack of any opinion

supporting the physical restrictions.

(Doc. 18 at 7-16).

## VII.   DISCUSSION

### A.  Symptom Claims

An ALJ evaluates subjective pain or symptoms using a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).   The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms; but concluded her statements about "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  (AR 22).  Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject her symptom claims related to her back and knee injuries,

6

degenerative disc and joint disease, fibromyalgia, and peripheral neuropathy.  (Doc. 18 at 12-16). The Court agrees.

Objective Medical Evidence

The ALJ discounted Plaintiff's symptom claims as "greater than expected in light of the objective evidence of record."  (AR 24).  An ALJ may discount a claimant's symptom testimony based on objective medical evidence in the record.  *See Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021).  In support, the ALJ cited 2021 x-rays of Plaintiff's back and knees described as "not significantly abnormal," and acknowledged significant abnormalities on earlier x-rays and an MRI prior to her total left knee replacement.  (AR 24, 104-05, 1326 (x-ray of lumbar spine showing Grade I-II spondylolisthesis of L5 on S1 and disc narrowing at L5-SI, x-ray of right knee showing moderate medial compartment joint space narrowing and slight tilt to the patellofemoral joint, and x-ray of left knee showing total knee arthroplasty in satisfactory alignment), 2456 (MRI of left ankle showing partial Achilles tear, tendinosis, and arthritic changes).  The ALJ also referred broadly to "a number of physical examinations with unremarkable findings."  (AR 24 (citing 671, 1629-32, 1640, 2634, 2639, 2784, 2793, 2827, 3061, 3076 (noting no physical examination was done), 3078 (noting she is not doing well with medication).  However, the Court's independent review of the record, indicates many of the cited examinations also documented abnormal findings, particularly related to Plaintiff's back and knee impairments, including limited range of motion with pain in low back and cervical spine, tenderness in the lumbar muscles, antalgic gait with slight limp on the left, muscle spasms, joint pain, back abnormality, positive Tinel and Phalen signs, and walks "like she is walking on glass." (AR 1630-33, 1640, 2634, 2639, 2784).  Similarly, while the ALJ's summary of medical evidence includes relevant findings of normal range of motion, intact sensation, normal deep tendon reflexes, gait within normal limits with "minimal limp," right lower extremity 5/5 strength, normal muscle tone and strength, no tenderness, and no swelling; these same records also include evidence that tends to support Plaintiff's symptom claims.  (AR 23 (citing AR 250 (normal musculoskeletal findings but also reporting torn meniscus and suspected patella fracture), 359, 364, 371 (noting post-op for arthroscopic left knee procedure), 671 (severe osteoarthritis previously noted),  1630

7

(examination also noting increased pain with range of motion, antalgic gait with limp), 1640 (abnormalities noted), 2634 ("walking on glass"), 2639 (same), 2784 (mild limp in left lower extremity, severe tenderness over Achilles tendon), 2793, 2827, 3061, 3076 (noting no physical examination was done), 3078 (noting she is not doing well with medication).  Moreover, the ALJ's decision acknowledges ongoing "physical examinations during treatment" that observed tenderness to palpation, pain with range of motion, mild swelling, limited range of motion, swollen Achilles tendon, left knee tenderness, and trigger points for fibromyalgia.  (AR 23).  On this record, the ALJ's reliance on objective evidence to discount Plaintiff's symptom claims is arguably not supported by substantial evidence.

Moreover, the Ninth Circuit has long held that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because objective medical evidence fails to fully corroborate the severity of pain alleged.  (Doc. 18 at 13); *Rollins*, 261 F.3d at 857 (emphasis added); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  As discussed below, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims are not supported by substantial evidence.  Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, ALJ's finding is inadequate.

Daily Activities

The ALJ relied on Plaintiff's reported ability to do some household chores, climb stairs to her bedroom, shower, and get dressed as a basis to reject additional limitations beyond those in the RFC.  (AR 24).  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her [testimony] as to her overall disability.").   Here, Plaintiff testified that she tries to help with chores but her daughter and grandchildren "get it done," her daughter helps her shower and get dressed, and she walks downstairs in the morning and "once I am down there, I stay."  (AR 46-48).  Plaintiff also reported in November 2021 that she was unable to get out of bed, perform housework, shop, or prepare meals without assistance.  (AR 1260, 1286).  Moreover, the ALJ confined this conclusory finding to the consistency between the daily activities and *the assessed RFC*, as opposed to citing any evidence suggesting that the sporadic activities reported by Plaintiff contradicted her reported symptom claims, or that the activities were performed in a manner transferable to a work setting. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Furthermore, an ALJ must specifically identify the statements he or she finds not to be credible, and the evidence that allegedly undermines those statements.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination.").  Here, in addition not identifying specific testimony deemed not credible, the ALJ did not explain how Plaintiff's limited sporadic activities contradicted her symptom claims, particularly as to difficulties related to back, knee, and joint impairments.  Thus, the ALJ's finding that Plaintiff's daily activities were inconsistent with her claimed limitations was not a clear and convincing reason, supported by substantial evidence, to discount her symptom claims.

Alleged Inconsistent Statements

Defendant argues the ALJ reasonably relied on Plaintiff's inconsistent statements as a clear and convincing reason to discount her symptom claims.  (Doc. 20 at 8).  An ALJ may

consider inconsistent statements by a claimant in assessing her symptom claims. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In support of this argument, Defendant cites the ALJ's finding that Plaintiff "reported aggravated symptoms with exertional activities, such as lifting, standing, and walking, postural activities such as bending and movement, and activities of daily living, including personal care, sleeping, and housework. Yet, during treatment, the claimant also reported no shortness of breath, muscle weakness, no fatigue, back pain slightly improving, able to do more activities, no arthralgias/joint pain, no back pain, no swelling in the extremities and doing well." (AR 23, 358-59, 477, 532, 541, 562, 1241, 1265, 2266, 2278, 3096, 3098). In support, the ALJ largely relies on the "review of systems" ("ROS") in selected treatment notes from the relevant adjudicatory period. However, the Court's review of the ROS in those treatment notes indicates those entries may have been entered by default in some instances. For example, in October 2019 the ROS indicated no report of migraines and no dizziness, but those symptoms were listed as Plaintiff's primary complaints (AR 358-59 (also noting Plaintiff went to hospital for migraine several weeks earlier); in February 2021 the ROS noted no reports of pain but the chief complaint at the treatment visit was pain radiating down Plaintiff's neck and back (AR 562); and in April 2021 the ROS noted no reports of dizziness and no loss of consciousness, while simultaneously noting Plaintiff sought treatment after a fainting episode that resulted in hospitalization (AR 1241). The Court also was unable to locate Plaintiff's statements that she as improving or able to do more activities in the cited records and identified only a single note that she is "doing well" (AR 3096). Further, the ALJ otherwise acknowledged Plaintiff's repeated reports of pain and examination consistent with her complaints. (*See* AR 23). For these reasons, to the extent the ALJ relied on inconsistent statements by Plaintiff, the Court finds it was not a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

Medical Opinions and Lack of Supporting Statements

Defendant further argues that the ALJ observed that the state agency medical consultants' findings supported the RFC. (Doc. 20 at 8). This argument is unpersuasive for several reasons. First, the ALJ in fact found the opinions of the state agency medical consultants "less persuasive"

due to partial record review. (AR 25). The ALJ also noted "there is no medical source statement from an examining or treating physician that endorses the extent of claimant's alleged functional limitations." (AR 24). An ALJ may reasonably rely on the lack of any corroborating medical source statement in discounting the severity of Plaintiff's subjective claims. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (contradiction with the relevant medical record was a sufficient basis for the ALJ to reject Plaintiff's subjective testimony); *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Edna v. Saul*, 2020 WL 1853312, at *8 (S.D. Cal. Apr. 13, 2020) (lack of medical opinion finding Plaintiff disabled was a clear and convincing reason to reject Plaintiff's subjective allegations). However, although the ALJ found those opinions unpersuasive and Plaintiff did not challenge that finding, the record includes progress reports from treating or examining physicians during the relevant period that imposed restrictions on lifting, pushing, pulling, bending, twisting, kneeling, squatting and walking as part of Plaintiff's worker's compensation claim. (AR 25, 1034-35, 1060, 1103, 1330); *see* 20 C.F.R. § 404.1504 ("we will not provide any analysis in our determination or decision about a decision made by any other government agency or a nongovernmental entity about whether you are disabled …. However, we will consider all of the supporting evidence underly the governmental agency or nongovernmental entity's decision that we receive as evidence in your claim."). Even assuming the lack of a disabling medical opinion could be one clear and convincing reason, on this record it does not amount to substantial evidence to reject Plaintiff's symptom claims in their entirety, particularly as to her back and knee injuries, degenerative disc and joint disease, fibromyalgia, and peripheral neuropathy.

Conservative Treatment

While not addressed by the parties' briefs,[2] the ALJ characterized Plaintiff's post-knee surgery treatment as "conservative, generally limited to medication, physical therapy, and steroid injections." (AR 24). Evidence of conservative treatment can support discounting symptom

---

[2] The Court may decline to consider this issue as it was not raised with specificity in Plaintiff's opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d at 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

11

allegations. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed). However, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814, at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)); *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010) (holding ALJ erred in relying on conservative treatment if "the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options were none exist."). An ALJ errs in rejecting subjective complaints if he "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610, at *4 (C.D. Cal. Nov. 8, 2019). Here, the ALJ did not cite specific records supporting the "conservative" characterization or link that characterization to a particular symptom claim by Plaintiff. (*See generally* AR 23-24); *Holohan*, 246 F.3d at 1208 (in considering Plaintiff's symptom claims, "the ALJ must specifically identify the statements he or she finds not to be credible and must explain what evidence undermines the testimony"); *Brown-Hunter*, 806 F.3d at 494. Thus, the Court cannot conclude that this general reference to "conservative treatment" constitutes clear and convincing reason, supported by substantial evidence, to discount the severity of Plaintiff's symptom claims.

Conclusion

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Additional Assignments of Error**

Plaintiff also argues the RFC is not supported by substantial evidence because the ALJ did not rely on any medical opinion supporting the assessed physical restrictions and failed to develop the record by obtaining "an opinion of Plaintiff's RFC from a medical professional."

(Doc. 18 at 8-12).  Because these issues are intertwined with the ALJ's symptom evaluation and the related assessment of the medical evidence and RFC, the Court declines to address these challenges in detail.  On remand, the ALJ must reconsider Plaintiff's symptom claims and conduct a new sequential analysis, including a reassessment of the medical opinion evidence, if necessary.

**C.  Remedy**

Plaintiff seeks remand for administrative proceedings, and the Court agrees that remand, rather than an award of benefits, is appropriate where further proceedings serve a useful purpose. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014).  The ALJ's errors in evaluating Plaintiff's symptom claims call into question whether the RFC and corresponding hypothetical to the vocational expert are supported by substantial evidence, and unresolved factual issues remain.  On remand, the ALJ should reevaluate Plaintiff's symptom claims and the medical evidence (including medical opinions), obtain additional consultative examinations and expert testimony, if appropriate, conduct a new sequential analysis, reassess the RFC, and, if necessary, obtain further vocational expert testimony incorporating all limitations the ALJ credits.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 18) be GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. 20) be DENIED.

3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

<u>**NOTICE TO PARTIES**</u>

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written

objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:  June 5, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14